Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is 18-1965, the United States v. French Hercules. Ms. Layman, good morning. Please proceed. Good morning, Your Honors. I'd like to start with something that Justice Sotomayor said in the 2016 case of Torres v. Lynch, which is an aggravated felony conviction has two primary repercussions for noncitizens. It renders them deportable and it makes them categorically ineligible for several forms of immigration relief ordinarily left to the discretion of the Attorney General. Once the aggravated felony statute applies to a noncitizen, no provision in the INA, the Immigration Nationality Act, and virtually no act by the Attorney General can prevent him or her from being removed. And this is the situation with Mr. Hercules that was unclear to the District Court at the time of sentencing. He expressed numerous times his skepticism that Mr. Hercules would ever be deported. There were other policy considerations going on, but in this case, because he pleaded guilty to an aggravated felony, there is no escape for him. He will be deported and that is what his counsel informed the judge at sentencing. This was Hercules' third drug conviction? Correct. He had one, I believe, when he was 20 years old. He had a second one when he was 28. And he hasn't been deported after either of the other two? Those were state cases and one of the points that I made in my brief is that sometimes with state cases, ICE doesn't necessarily catch up to them as quickly as they do. In this case, he's within the custody of the Bureau of Prisons with an immigration detainer on him. There's no way he's going to be able to escape that or hide from them because he is in federal custody. And they know he's in federal custody because they have a detainer on him. The District Court seemed to be of the view that it did have discretion? Well, this is where I think it's kind of tied in with his belief that he wasn't going to be deported or that he might not be deported. I get that point, but just first level point, the District Court did seem to think he had the discretion to take account of deportation. Are you challenging that? He said, I think I can do this, but I believe this is a collateral circumstance. And so he expressed his answer. The court said more than that. I'm sorry? The court said more than that. The court said, I can do this in the right case, but this isn't the right case. And I'm arguing this is the right case and that the reason he thought it wasn't the right case is because of that. But the question was whether the court thought that it had discretion. And I think it's pretty clear the court did think it had discretion. I believe he did, but he had some doubts because of his skepticism. I guess what I'm asking is what our review is supposed to be in a situation? Suppose the District Court says, I have the discretion to do it. I just don't think this is the case. That's all he says. I think he went further than that. I know that. I'm asking. Suppose that's all he said. I think that would be a different circumstance. And what would be our review then? We would just say that that would be fine? I'm trying to figure out what we're supposed to do in a situation in which the District Court did not err in the sense of saying, I am legally barred from exercising my discretion, which I could see how we could review that and say, you're wrong. You do have the discretion, so you remand and let him exercise the discretion. That's not this case as I read the record. He said that this court had not yet ruled, and he looked at other circuit courts which ruled differently. Just grant me the assumption that in this case, I read the record to say he thought he has discretion. It's not as if there's a categorical legal bar on veering downwards to take account of deportation. Correct. Okay, so we're not in that world. The world we're in is where he thinks such an exercise of discretion might in some case be lawful. Yes. I'm not exercising it here. What is our review supposed to be? He's not exercising it here because he's under the mistaken impression that deportation is not a foregone conclusion. That's all throughout the record. If it's clear, your view is if he is given that as his reason, and that reason is not sustainable, then we vacate and remand for him to now reconsider it. Suppose I think the record isn't so clear that the reason he didn't exercise the discretion is solely because he thought deportation would not be a foregone conclusion. Suppose it's I read the record and he seems to also say, I'm not sure what to do with collateral consequences. I don't feel that comfortable exercising it. Then I think this court could take it upon themselves to say, okay, in these kinds of cases, the court has discretion to consider these circumstances. They are not just solely collateral. They can be considered as a part of the 3553A concerns. Your district court seems to agree with you that it can do that. He does, but this is completely colored by his misapprehension of what is going to happen to Mr. Hercules. Now it's clear both counsel and the court saw him as a different kind of defendant. But he wasn't their typical drug conspiracy defendant, and that he came from a very good family, and this was a very severe consequence. And the judge was hoping that this wasn't going to happen to him. But yet there's no doubt it will happen to him because that's the law. And he wasn't given that opportunity. And I'm really asking that he let the case be sent back so that he can take it. Maybe he'll come back with the same sentence, but maybe he won't. It's possible he would come back with a harsher sentence. Have you discussed with your client the fact that this appeal could result in a worse sentence to him? My... Have you, yes or no? I attempted to. My client didn't respond to any of my letters. Did you lay out for him in your letters that taking an appeal could possibly lead to a worse consequence? I did not because I did not think in this particular case that was going to be the kind of risk, given the circumstances, given what the trial judge said at sentencing, given everything, that this was not the kind of case that would lead to a harsher sentence. He got under, below the guideline sentence as it was, but it's still a very harsh sentence because it doesn't take into account he won't get the 500-hour drug treatment program. He will be detained at the end of his sentence due to the ICE detainer for some unknown period of time until he's deported. So it was his best professional judgment that there was no risk whatsoever in this appeal resulting in a worse judgment? As I looked through everything, I did not... Yes or no? No. Okay. Your analysis to this point also overlooks, with respect, something else that the district judge had to say. It is clear that in exercising his discretion, the district judge was also concerned that reducing the sentence because of the prospect of deportation would wind up treating non-citizen defendants more leniently than citizen defendants. And the judge voiced that concern in explaining his reasons for why this wasn't, to use his phrase, the right case for giving a substantial downward variance on the ground of deportation consequences. But that was based upon his belief that it wasn't likely that Mr. Hercules would be deported. No, that's not so. His concern was clearly that I would sentence John Doe, an American citizen not facing deportation, on these facts to X years. Why should I sentence a non-citizen on the same facts to something less than X years? Because he also faces a civil consequence, that is, deportation. That's the concern that he expressed in the record. Well, he said, I'm concerned I would be giving him an added benefit if he didn't get deported. But, in fact, he will be deported. He said that, too. He said that, too. Your reading of the... Go ahead. Judge Selya's understanding, which is also my understanding, your client got, if you will, some leniency by being treated with the district court deciding this is not the case in which I'm going to exercise any discretion to consider this other factor. I would disagree that he was given a more lenient sentence for that because he... It follows from the logic of what the district court said. But, in any event, why, if the district court said it had discretion but chose not to exercise it, why should we get into this issue at all? Because all of the court's reasoning was based on this mistaken belief that he most likely would not be deported when, in fact, he will be. The district court also said, look, I don't know what the law is going to be at the time he gets out of prison. That's a fairly accurate statement, isn't it? If I can just finish. The aggravated felony provision has been in place since 1994, and I would suggest it's highly unlikely that's going to be one of the major charges. That may be highly unlikely, but you argued that it's absolutely certain, and the district court decided not to adopt your view. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court, Benjamin Locke for the United States. The district court here provided three independent bases for declining to exercise its discretion to take the deportation, potential deportation consequences to Mr. Ergulis into account. The first was obviously his factual determination that deportation was uncertain in this case. The second, as Judge Barron noted, was that this case involved, or that deportation consequences involve collateral consequences that, quote, are hard for the court to assess and to do so fairly. And the third reason, as Judge Selya noted, was the court's, quote, greatest concern, and that was fairness between citizen defendants and non-citizen defendants. At this point, if it's true, how is that consistent with your assertion that he recognized that he had the discretion to do it? Because that would be true in every single case. Well, he very explicitly recognized that he had discretion to do it. I know, but if I – so one way to reconcile the two would be to read his concern about unfairness as tied to the risk that the defendant won't be deported. You want us to reject that. I would read his – If we reject that, doesn't it reduce to a statement, I have discretion to do it, but it will always be unfair to exercise it. No, I don't – Why not? Just tell me why not. Yes, I would say that one can envision deportation consequences that are of a nature and so certain that – It wouldn't. Well, for example, the Second Circuit decision in Faberage involved a defendant who had been extradited to the U.S. solely for trial, had no prior contact with the United States, was charged in a terrorism case involving his role in assisting rebels in Sri Lanka in a civil war there. And upon his deportation back to Sri Lanka, faced political consequences or had political enemies and faced severe consequences in that sense. And so that strikes me as a case in which you're not dealing with a consideration of fairness between U.S. citizens and non-U.S. citizens. You're dealing with concrete consequences to a particular defendant that are sort of – Is that because the person's not a U.S. – had no ties to the U.S.? In that particular case, yes. So the idea here would be you have no discretion to do it for any person who does have ties to the U.S.? No, again – I'm just trying to figure out, if a person has ties to the U.S., I thought the law was that you do have discretion to take deportation consequences into account. So I'm trying to figure out, given that that's the baseline that might be error to conclude otherwise, what is the non-arbitrary reason that the district court gave here for not exercising that discretion? I would say that this was a very run-of-the-mill deportation case, or run-of-the-mill case involving deportation consequences. I suppose, at least hypothetically, there could be a case in which the defendant facing the risk of deportation says, I will be killed if I am deported, and the agency says, it's close, but we don't think you've met your burden of proving that you will, in fact, be killed. That is not this case, but – Correct. I think – Is that a – the government wants to take the position that you only have discretion in the circumstances where there's a risk that the person would be killed? No. The government's position would be that these are very fact-specific inquiries. Right. I'm trying to get a sense of what the facts are here that you think are the distinguishing features of this. Well, I would say that the district court viewed – He seemed to be of the view that the distinguishing feature was that this person might not be deported. That seemed to be the lead distinguishing feature from the ordinary case, correct? No, I wouldn't say that. Is there some other feature of the case that distinguishes it from the ordinary case? I would say that the district court viewed this as an ordinary case. This was a case in which deportation was uncertain to some degree, and it was a defendant who had a country to which he was going to be deported. The uncertainty of deportation seems to be – Is there something other than the uncertainty of deportation specific to this case that the district court relied on? Well, I would say that the court found reasons other than the certainty or uncertainty of deportation to – But my concern is that those reasons when you articulate them seem to be reasons that would apply to every case and therefore seem somewhat inconsistent with the idea that he had discretion. The only example you gave was somebody who had no ties to the U.S. No, and – Or somebody who might be killed. But it's not just somebody who might be killed. There are factual circumstances that differ in every case, and the consequences based on the country to which a person is going to be deported, based on the political circumstances there, based on crime, based on whether they face consequences due to criminal activity, gangs, and whatnot. So I think that it's very difficult. The court, as he said, if there is a right case, this isn't it, was based on his assessment of the fact that the consequences here were not sufficient to try to draw a line between a citizen defendant and a non-citizen defendant. So I suppose there's also an argument that where a matter is committed to the discretion of the district court and the district court says, I recognize that I have that discretion, but if I put together three different thoughts as to why I'm not going to exercise that discretion, that it's a little hard for an appellate court to single out one of the three when the district court put them all together to say, I don't think this is an appropriate case. Correct. There were three reasons, and in certain cases the impact of the collateral consequences or the fairness issue may fall out differently. But I think the court's ably exercised its discretion here. It certainly wasn't an abuse of discretion to decline to give the defendant credit in this case. The key, it would seem to me, is that although the district court mentioned three factors, the district court, there's nothing in the district court opinion that led me to believe, or the district court's bench rule, that led me to believe that any one of the three factors was categorical or was dispositive. The district court expressed its concern about collateral consequences, expressed its concern about what it viewed as the speculative nature of whether deportation would really happen, expressed its concern about the unfairness to other defendants similarly situated, to citizen defendants, and said, in effect, when you consider all these things together, I don't think this is the case for me to apply a variance based on the fact of likely deportation, even though I realize that that's a possibility in the Wright case. I think that's 100% correct. After discussing each of those three concerns of the court in depth, the court then proceeded to summarize its position by saying, for all the reasons stated, for the speculative nature, for the difficulty of assessing the collateral consequences, and for the fairness reason, I'm going to decline to exercise my discretion here. So I do think that it would be very difficult to isolate one of those three as an abuse and send it back. Thank you very much. Thank you both.